## SCHAEFER v. BOWERS, Collector of Internal Revenue.

### No. 200.

Circuit Court of Appeals, Second Circuit.
June 24, 1931.

George Z. Medalie, U. S. Atty., of New York City (Frank W. Ford, Asst. U. S. Atty., of New York City, of counsel), for appellant.

John W. Davis, of New York City (Marion N. Fisher, of Washington, D. C., and Marvin Lyons, of New York City, of counsel), for appellee.

C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Eldon O. Hanson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for Commissioner of Internal Revenue.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

Schaefer, the plaintiff, was an employee of the Standard Oil Company of New Jersey, and became a party to a stock subscription plan, inaugurated by his employer on December 30, 1920, for a period of five years. The plan provided that any employee might contribute to a fund so much of his pay as he chose up to twenty per cent., to which the employer would add one-half. Trustees, appointed by the employer, were to receive the joint contribution, and from time to time invest it in shares of the employer's stock, at a price fixed on January first of each year, no greater than the average price for the preceding three months, and not less than ten per cent. below it. The title to the shares was to be in the trustees, but they were to be credited upon the trustees' books to the employees in proportion to the joint contribution. Their rights in the shares were to be "only as hereinafter declared."

(1) An employee might remain in the service of the company and withdraw from the fund. In that case he got back only his own deposits with interest, or if the trustees so decided, an "equivalent thereof" in shares at their average cost. (2) He might leave the employer's services voluntarily, or be "discharged for good cause (of which the trustees shall be the sole judges)." In either event he should also have only his money back with interest, or "at the option of the trustees," an equivalent in shares. (3) He might be retired or quit "on account of total disability or for other satisfactory cause (of which the trustees shall be the sole judges)," or he might be discharged through "no fault of his own." In either of these cases he was to receive the full amount of the shares to his credit at the time. If he died, his successors had the same rights.

Any shares or money accruing through withdrawals swelled the fund as a whole, and at its "termination the fund shall forthwith be liquidated by the distribution of all the stock and cash therein to and amongst the then participants." The employer reserved the right to recall, abolish or amend the plan, as provided in the New Jersey law (chapter 175 of the Laws of 1920, P. L. p. 354 [Comp. St. Supp. §§ 47—183 to 47—187]), which gave such a power to an employer, provided he restored their contributions to the employees.

Schaefer made his contributions regularly to the end of the five year period, and received certain shares of stock as his distribution. He had already paid an income tax upon what he contributed in the years when it was credited to his account with the trustees, and the question is whether the shares which he received at the conclusion of the plan are taxable as income at their value at that time, or at their purchase price. If the last, he was taxable in 1925 only upon the amount contributed by the employer, upon the accrued dividends and upon the surplus accruing from withdrawals. If the first, he was taxable upon the value at the time of distribution of all that he then received, less his contributions. The relevant section is 219 (f) of the Revenue Act of 1926 (26 USCA § 960 note).

The plaintiff's argument is that, when the trustees bought shares of stock by means of the joint contribution of employer and employee, they became his in equity. Their distribution at the end of the period was not income; his property had merely appreciated, and under well-settled law appreciation cannot be taxed until he sells. When he does, he will be chargeable with the profit then received, to be determined by the difference between the cost, that is, the joint contribution, and the price he receives on their sale. While it might theoretically have been more proper to tax the employer's contribution when made, the statute has postponed it. But that contribution, together with the dividends and surplus due to withdrawals, are all that are

meant by the phrase, "amount actually distributed or made available."

The defendant's argument is that no part of the fund was ever unconditionally the employee's property except his own contributions and interest upon them, these alone being all that he was ever certainly entitled to receive. Everything else—the shares, the dividends and the surplus from withdrawals —he might or might not get, depending upon his continuance in the company's employ till the period was completed, and upon the company's carrying on the plan to its termination. Hence it was right to tax him originally upon his contributions when they were received and invested; but upon the shares, etc., at distribution, when they first became his. The fact that he received them in kind, not in cash, is irrelevant. The issue so drawn obviously turns upon the character of the employee's interest in the fund before distribution. Each side is right upon its own interpretation of the plan, and we have to choose which one to accept; so far as concerns any general principles of the income tax, there is no difference to resolve.

When shares were unconditionally allocated to an employee under a kindred scheme, we held that they were taxable when credited to him [Rodrigues v. Edwards, 40 F.(2d) 408], but here the employee's right to anything but his own contribution was conditional until the period expired. We do not question the existence of a conditional equitable interest in the shares when purchased; or that an employee might file a bill against the trustees, if they abused their powers. Nor do we rest upon the fact that the legal title was in the trustees; an equitable interest is often, perhaps usually, now treated as more than a right in personam. Brown v. Fletcher, 235 U. S. 589, 35 S. Ct. 154, 59 L. Ed. 374. Moreover, even a right in personam is property whose appreciation we can assume to be as little taxable as any other.

We rely first upon the fact that the right, whatever it was, was conditional on the employee's continuance in the company's service for five years. The plaintiff answers that this was a condition depending wholly upon his own volition, and cannot properly be regarded as a condition at all. We cannot agree. He might be discharged, and the trustees were to be the "sole judges" whether or not it was for "good cause." It is idle to say that a man subject to discharge for reasons resting in the decision of a third person, voluntarily abandons the service, because his discharge presumably depends upon his own conduct. He may prove incompetent, or arouse the displeasure of his employer for reasons of which he could not anticipate such a result. Even though the decision of the trustees was subject to eventual review in cases of plain abuse, the occasions for its lawful exercise might be such as he could not control or foresee.

Moreover, even if it can be thought that any discharge is voluntary, still his rights changed upon distribution. Until then, his interest was charged with the obligation to remain; that is as true a condition as though his employment did not rest in his pleasure. Practically it might prove onerous; he might find it much to his advantage to go elsewhere, but his decision to do so was clogged by the fact that he would lose his shares. Certainly he had not that untrammelled dominion over property so limited which he has over property in general. An executory limitation is none the less a condition because performance rests with the grantee. The release from such a condition changed the character of the interest as much as in a number of cases where the new property was treated as income. U. S. v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180; Rockefeller v. U. S., 257 U. S. 176, 42 S. Ct. 68, 66 L. Ed. 186; Cullinan v. Walker, 262 U. S. 134, 43 S. Ct. 495, 67 L. Ed. 906; Marr v. U. S., 268 U. S. 536, 45 S. Ct. 575, 69 L. Ed. 1079; Allen v. Commissioner, 49 F.(2d) 716 (C. C. A. 2).

Second, the right to cancel the plan was reserved in the widest terms allowed by the New Jersey statute; that is, at the pleasure of two-thirds of the shareholders. If it was cancelled, the company need return only the contributions of the employees. Section 3 of the act (Comp. St. Supp. § 47—185) provides that any cancellation of such a plan shall be subject "to the restoration by the corporation of any moneys contributed by employees * * * for which no stock or other equivalent has been issued." The plaintiff argues that, once the trustees bought shares and credited them to an employee, the company had no power under the statute to deprive him of them. We do not so read it. Shares are not "issued," whose title remains in the trustees, merely because they are provisionally credited to the employees upon the books. They may never be "issued" at all; it was precisely the purpose of the plan at bar to hold them back until it appeared whether the employee was entitled to receive them at the close of the period. The meaning of the section is different. It is in limitation of the obligation to "restore." The

company need repay only those contributions for which the employees have not already received an "equivalent," in "stock" or otherwise. The employer is to be allowed at any time to abandon the venture, if it turns out impracticable, either because the shares fall in value, or for other reasons. The only limitation is that he must always insure his employees against loss. The bonus is viewed as a favor which he may withdraw, so long as they come out whole. Nor can we accept the interpretation placed by the plaintiff on that clause in the plan which is headed "Time of Delivery of Stock." This refers only to a "termination" by lapse of time and in due course, as the heading shows. A rescission of the plan as a whole would not be such a termination; the power to rescind was reserved in other language, borrowed from the statute; it was not circumscribed by the clause quoted.

The plaintiff further argues that, if so, then section 219 (g) of the act (26 USCA § 960 note) applies, and the company is taxable upon the income of all the trust except the employees' contributions. But the situation covered by section 219 (g) is quite different from that at bar; it refers to settlements of the common kind, in which the settlor either alone, or with some third person, is vested with powers of revocation. Assuming—what is not altogether clear as matter of language—that the company may be called the "grantor of a trust," the general section is not to be read as in limitation of the specific provision of section 219 (f), which affects to deal generally with all such arrangements, and is the exclusive measure of the taxes imposed in their execution.

Therefore, we think that when the shares were distributed at the close of the five-year period, the plaintiff got for the first time the income which had theretofore been accumulating, conditionally upon his continued service and the company's continued purpose to complete. Appeal of Lister, 3 B. T. A. 475. Until then it was uncertain whether he would ever receive the shares; they had become his only provisionally. To be sure section 219 (f) uses only the word "amount"; but the purpose was to cover all sorts of plans, cash or stock, and the word used was apt to include both. Moreover, if it be thought that the defendant must do some violence to the language, certainly the plaintiff does much more. He must say that the tax is levied on the theory that the employee receives upon distribution, not the shares themselves, which is all that in fact he gets, but only so much as the employer has contributed from time to time in the past, a quite different "amount." Why it should be supposed that Congress had in mind so artificial a use of words we cannot conceive. Had it been the purpose to tax that "amount" on the theory that the employee became the owner of the contributions when they were credited to him, that was the time to tax them. A tax at that time would have disclosed a purpose to treat him as owner of the shares when they were purchased, and it could with some cogency have been argued that any subsequent appreciation must be treated as appreciation elsewhere. But this was not the method; nothing was to be taxed till distribution, and then the amount distributed. The change effected by section 165 of the Revenue Act of 1928 (26 USCA § 2165), did expressly accomplish just this, but it cannot be used as interpretative of the act of 1926. Indeed, if it chanced that the shares purchased had fallen in value, the employees would have had to pay a tax upon income to which they had never had access, and over which they had never had control. Although this is a possibility under the act of 1928, it appears to us an unreasonable interpretation without express warrant.

Our reasoning would indeed include all the shares purchased, as well the two-thirds bought with the employee's money, as the third bought with the employer's. However, we have not that question to decide because the defendant's attorney has withdrawn any claim to more than the third. The Commissioner of Internal Revenue has indeed filed a brief in which, as we gather, though this is not altogether clear, he asserts that all the shares are to be treated alike. But we cannot look upon the Commissioner as other than an amicus in this action, which is against the collector's representative, for whom the district attorney appears. So far as he is content to admit any part of the plaintiff's claim, no dispute arises, and we can dispose of only what remains. Therefore, we hold only that in so far as the tax was levied upon that third of the shares bought by the employer's contribution, it was valid. By virtue of the defendant's concession a judgment may be rendered for the remainder.

Judgment reversed.