McNAMARA

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 10915.

United States Court of Appeals, Seventh Circuit.

Feb. 23, 1954.

Herman A. Fischer, Chicago, Ill., Ellsworth C. Alvord, Washington, D. C., William H. Quealy, Chicago, Ill., for petitioner.

H. Brian Holland, Asst. Atty. Gen., Harry Marselli, Ellis N. Slack, Joseph F. Goetten, Sp. Assts. to Atty. Gen., U. S. Dept. of Justice, for respondent.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The petitioner, Harley V. McNamara, filed his petition in the Tax Court of the United States for a redetermination of a tax deficiency found by the Commissioner on the petitioner's individual income tax for the years 1946 and 1947. The Commissioner had determined that the petitioner owed additional income tax in the amount of $61,244.87 for the year 1946, and $64,215.93 for the year 1947.

The Commissioner contended that these additional amounts of tax were due because of the purchase by the petitioner in the years 1946 and 1947 of corporate stock of his employer, the National Tea Company, pursuant to an option granted to the petitioner by the National Tea Company to purchase the stock at a price less than the fair market value of the stock in consideration of services of the petitioner. The petitioner contends that he was granted this option not as compensation but in order to give him a proprietary interest in his employer's business; that, if the option were intended as compensation, it could only be considered as compensation to the extent of the difference between the option price and the fair market price of the stock when the option was granted in 1945; and that it, therefore, should be considered as income to him only in 1945, and not in 1946 and 1947 when the option was exercised. During the years 1945, 1946 and 1947, the petitioner filed his income

tax returns on a cash receipts and disbursements basis.

Prior to March 1, 1945, the petitioner was employed by the Kroger Grocery and Baking Company as manager of its Chicago branches. In this employment he received a fixed salary and a percentage of the profits. Early in 1944 the petitioner and Mr. John F. Cuneo had a talk concerning the possible acquisition by Cuneo of stock in the National Tea Company. This stock had been selling at a low price, which they agreed resulted from poor management of National. In 1944 Cuneo, after acquiring a large block of National stock, talked to the petitioner about leaving Kroger and taking over the management of National. The petitioner indicated that he would be willing to do this at a slight increase in salary, but that if he did so he would also want an opportunity to acquire some of the National stock. Cuneo told the petitioner that he (Cuneo) would recommend such an arrangement to the board of directors of National.

On February 2, 1945, the petitioner received a letter from Cuneo enclosing a proposed contract of employment of the petitioner, and asking for the petitioner's assurance that he would sign the contract if Cuneo could secure its approval by National. This proposed contract was for one year and provided for an annual salary of $27,500.00 and additional compensation of 2 per cent of the net profits of National in excess of $300,000.00, but limited the aggregate annual compensation to the petitioner to $60,000.00. The contract also provided that, "In consideration of the Employee's acceptance of employment hereunder, the Company agrees to set aside 12,500 shares of its Capital Stock now in its Treasury, subject to an option to purchase by the Employee at any time during the term of this contract at the price of $12.00 per share." The stock was then selling at $15.25 per share. Prior to the annual meeting of the shareholders of National, which was held on March 21, 1945, Cuneo sent a notice to the stockholders notifying them that he was going to recommend to the directors the employment of petitioner as executive vice president and general manager in accordance with the terms set out above.

At the meeting of March 21, 1945, the petitioner was elected a director of National, and at the meeting of the directors on the same date the proposed contract of employment with the petitioner was discussed, but it was decided that no action should be taken on the contract prior to its approval by the Wage Stabilization Board. On the same date the petitioner was elected executive vice president and general manager of National, in which position he served until he was elected president of the company on March 21, 1947.

On August 23, 1945, the executive committee of National instructed the treasurer of the company to procure from the Wage Stabilization authorities their approval of the proposed $27,500.00 salary for the petitioner and of the granting of the option for the purchase by the petitioner of the National stock. On the following day, August 24, 1945, National entered into an employment contract with the petitioner for two years, and the board of directors adopted the following resolutions concerning the petitioner's salary and the option for his purchase of shares of its stock:

"Whereas, at its 1945 annual meeting this Board deferred to a subsequent meeting the fixing of the compensation of Harley V. McNamara, as General Manager of this corporation, he in the meantime to draw stated amounts generally on account of salary, and

"Whereas, the Executive Committee of this corporation has recommended that, *in addition* to such stated cash payments on account of salary and such additional contingent compensation as is now in effect, *the compensation* of Harley V. McNamara * * * *for the current year* shall include the option hereinafter specified:

"Now, Therefore, Be It Resolved that the *compensation* of said officer

*for the present fiscal year* shall be and the same is hereby fixed at cash salary of $27,500 for said Harley V. McNamara * * * *and in addition thereto, stock option,* as provided for in the next succeeding paragraph.

"Resolved that the Vice President and Secretary be and they are hereby directed to execute the following option to Harley V. McNamara * * * and that the officers of this corporation be and they are hereby authorized and empowered to issue stock certificates to Harley V. McNamara * * * upon the receipt of considerations mentioned in the option agreement * * *." (Our emphasis.)

On the same date National entered into an employment contract with the petitioner for two years pursuant to the terms which had been discussed and also granted to the petitioner and "his heirs, executors, administrators and assigns" an option, to expire on August 24, 1947, to purchase from National 12,500 shares of its common stock at a price of $16.00 per share on the condition that not more than 3,125 shares should be purchased prior to February 24, 1946, not more than 6,250 shares should be purchased prior to August 24, 1946, and not more than 9,375 shares should be purchased prior to February 24, 1947. The petitioner signed an acceptance of the option on September 12, 1945. The fair market value of the stock was $19.00 per share on August 24, 1945, and $20.00 per share on September 12, 1945. Pursuant to the terms of the option, the petitioner purchased 6,250 shares of National common stock on March 12, 1946, and the remaining 6,250 shares on March 6, 1947. The fair market value of the stock on these two dates was $28.50 and $27.50, respectively.

█ █ The Tax Court held, 19 T. C. 1001, that the gain derived by the petitioner from the exercise of the option in each instance was equal to the difference between the option price and the fair market value of the shares on the dates of the purchases, and that this gain was intended by the parties as compensation to the petitioner and should, accordingly, be taxed as income received during the years 1946 and 1947.

We, of course, are not permitted to disturb findings of the Tax Court which are based on substantial evidence. Commissioner of Internal Revenue v. Scottish American Inv. Co., 323 U.S. 119, 124, 65 S.Ct. 169, 89 L.Ed. 113; Rule 52 of the Federal Rules of Civil Procedure, 28 U. S.C.A. We think that the finding of the Tax Court that the option to the petitioner was intended as additional compensation to the petitioner for his services is clearly sustained by the evidence. Before granting the option National directed that approval of the proposed terms of the employment contract with the petitioner, including the granting of the option, be procured from the Wage Stabilization Board. In the resolutions of the board of directors of National authorizing the granting of the option we find it expressly stated that the option should be "in addition to such stated cash payments on account of salary and such additional contingent compensation," and that petitioner's compensation should "include the option."

In its annual report to the Securities and Exchange Commission for the calendar year 1945 National reported that the consideration for the granting of the option to the petitioner was "Services rendered and to be rendered." In its Federal income tax return for the year 1945 National claimed a deduction for compensation to the petitioner of $16,375.00, representing the value placed on the option as of the time it was granted to the petitioner. In his Federal income tax return for the year 1945 the petitioner reported income of $16,375.00, which represented his calculation of the value of the option on August 24, 1945, the date it was granted to him. The fact that the Commissioner disallowed this deduction by National and said that the additional income as reported by petitioner was not

income to him, does not prevent this action by National and the petitioner from disclosing their intentions.

With all of this evidence as to the intentions of the parties at the time the option was granted, we cannot disturb the finding of the Tax Court that the option was intended as additional compensation to the petitioner for his services. But it seems equally clear to us that if we say, from this evidence, that it was the intention of the parties that the grant of the option was to constitute compensation, we must also say that the parties intended it as additional compensation for petitioner's services for the year in which the option was granted. The resolutions of August 24, 1945, authorizing the granting of the option, described it as being compensation for the "present fiscal year," and for the "current year," and, as we have pointed out above, the Federal income tax returns of both National and the petitioner for the year 1945 treated the option as income paid to and received by the petitioner during that year.

Here we have a different factual situation from that considered by the Supreme Court in Commissioner of Internal Revenue v. Smith, 324 U.S. 177, at page 179, 65 S.Ct. 591, at page 592, 89 L.Ed. 830, where the court said:

"Since the Tax Court found that the market price of the stock on the date of the option did not exceed the option price, it is evident that its finding that the option was given as compensation for respondent's services, had reference to the compensation to be derived from exercise of the option after the anticipated advance in market price of the stock."

But the court in that case pointed out, 324 U.S. at page 181, 65 S.Ct. at page 593, that:

"When the option price is less than the market price of the property for the purchase of which the option is given, it may have present value and may be found to be itself compensation for services rendered."

In the instant case the fair market price of the stock when the option was given was $19.00 per share, while the option called for the payment of only $16.00 per share—a difference on 12,500 shares of $37,500.00. National and the petitioner both calculated the then value of the option was $16,375.00. The only witness testifying before the Tax Court as to the value of the option when it was given said it was then worth $22,081.25. It is important to remember that the option here was granted to the petitioner and his heirs, executors, administrators and *assigns*. The petitioner was, therefore, given the right to sell and assign the option without restriction and the option was not conditioned upon the petitioner's continuing as an employee of National. While the Tax Court expressed doubt as to the reliability of the witness who testified as to the value of the option when it was granted, the record clearly shows that the option itself was of substantial value at that time. While the option did not give the petitioner the ownership of the stock, it did give him an assignable right to buy the stock at a bargain price, a right which the petitioner could have promptly sold for a substantial price. But, in spite of this fact and the other facts detailed above, the Tax Court thought that, "the facts as a whole in this record point to the conclusion that the 'intended compensation' in this case was not the option itself, but rather the profit to be derived upon the exercise of the option."

We agree that the intention of the parties is the controlling factor in determining this question, Bogardus v. Commissioner, 302 U.S. 34, 43, 58 S.Ct. 61, 82 L.Ed. 32, but we think it is clear, both from the intentions of the parties as expressed in the contract and option, and from their actions in including it in their income tax reports for the year 1945, that the amount which they calculated as the then value of the option was the amount they intended as compensation to the petitioner.

It also seems significant to us on this question that while the employment contract and the option were under discussion by the parties the price per share at which the petitioner was to be permitted to buy the stock was increased from $12.00 to $16.00, so that the spread between the option price and the fair market value per share remained approximately the same, and, consequently, the cash value of the option which was finally granted was approximately the same as the cash value of the option first suggested. This seems much more consistent with the parties having in mind the value of the option as a consideration for the petitioner's services rather than the gain which he might realize by exercising his rights under the option during the years 1946 and 1947.

Both the Commissioner and the Tax Court rely heavily on Connolly's Estate v. Commissioner, 6 Cir., 135 F.2d 64, 146 A.L.R. 1387. But the factual situation there was very different. In that case there was nothing in the resolutions authorizing the granting of the option in the contract of employment, nor was there anything in the option itself indicating that the additional compensation to be derived from the option was intended by the parties to be "for the current year" or "for the present fiscal year," in which the option was granted. Nor do the facts in that case show that the parties made any report in their income tax reports showing that the value of the option when granted was intended as compensation to the taxpayer for that year. It is true that in that case the option under which the stock was acquired had value at the time it was granted, but, so far as the opinion shows, the possibility that the parties intended the value of the option as a compensation was neither considered nor raised.

The Tax Court also cites as authority for its holding Van Dusen v. Commissioner, 9 Cir., 166 F.2d 647. In that case the president of the employer corporation gave an employee an option to purchase, for $5.00 per share, 50 shares of the stock of the corporation each month for a period of ten years. The option was conditioned upon both parties to the option living and remaining employees of the employer corporation. At the time the option was given the fair market value of the stock was about $9.00 per share. Under the option the employee bought shares during the next four years for a price much less than the market value of the stock at the time of the purchases. Neither the corporation nor the president claimed any deduction in income tax reports for the value of the option when given, nor for the sales of stock at less than the market value when the option was exercised. Nor was it shown that the employee reported in his income tax return any income on his receipt of the option. There the value of the option at the time it was given was highly speculative. The option limited the employee to acquiring not more that 50 shares of stock in the month the option was granted or in any one month thereafter, and, since the petitioner could acquire shares, 166 F.2d at page 650, "only so long as he remained in the corporation's employ— an unpredictable contingency at the time the option was granted—there exists no basis for arriving at the value of the option as respects the 2,350 shares which were acquired under it in later years, by using the value of those shares at the option date." The court, therefore, concluded that, "the disposal value of the option could scarcely have been more than nominal at the time that it was granted." Immediately following this statement the Court of Appeals said, 166 F.2d at page 651: "The Tax Court did not find that the option itself was given or intended as compensation for petitioner's services, but expressly determined that the compensation was the difference between the amount paid for the stock and its fair market value at the several dates of purchase." Thus we see that the facts in neither of these cases is comparable to the facts presented by the instant case.

A consideration of the entire record in this case convinces us that the finding of the Tax Court that the compensation intended by the parties "was not the 'value'

of the option but was the difference between the fair market value of the stock on the date of exercise and the option price," is clearly erroneous because it is not supported by substantial evidence. It seems clear to us, from the language of the parties found in the written instruments they executed and from their actions, that they intended the option itself to be the additional compensation by the parties for petitioner's services.

The evidence here establishes a factual situation such as the hypothetical one described in Commissioner of Internal Revenue v. Smith, 324 U.S. 177, 181, 65 S.Ct. 591, 89 L.Ed. 830, where the option when granted had present value, and might itself be found to be compensation for services rendered. We think the evidence in the instant case clearly required such a finding by the Tax Court.

The decision of the Tax Court is reversed, and the cause is remanded for further proceedings consistent with this opinion.