**COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,**

v.

**ESTATE of James S. OGSBURY, deceased, Florence N. Ogsbury, Executrix, and Florence N. Ogsbury, Surviving Wife, Respondents.**

No. 319, Docket 24975.

United States Court of Appeals
Second Circuit.

Argued April 18, 1958.

Decided July 16, 1958.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Joseph F. Goetten, Kenneth E. Levin, Attorneys, Department of Justice, Washington, D. C., for petitioner.

Harman Hawkins, New York City (Duer, Strong & Whitehead, Ernest D. Fiore, Jr., New York City, of counsel), for respondents.

Before CLARK, Chief Judge, and LUMBARD and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

The Commissioner seeks reversal of a decision of the Tax Court, 28 T.C. 93, which set aside an income tax deficiency assessed by him against the taxpayer for the year 1948. The sole question thus presented is whether an employee received income in respect of a stock option granted him by his employer in the year that he exercised the option, 1945, or whether he received the income in a later year, 1948, when he paid for the stock and acquired title to it. For the reasons hereinafter stated we agree with the Tax Court that in the instant case the significant event tax-wise occurred in the earlier year, 1945, when the option was exercised, and hence that the deficiency assessed by the Commissioner for the year 1948 was improper.

The facts, as stipulated and found by the Tax Court, are not in dispute. On August 19, 1941 James S. Ogsbury entered into a contract of employment with Fairchild Aviation Corporation by the terms of which he was granted a non-assignable option to purchase 10,000 shares of authorized but unissued stock of the corporation at $4.50 per share. The option could be exercised by Ogsbury at any time prior to January 1, 1946 or, if he died before that date, the option could be exercised by his estate within one year after his death but not later than December 31, 1945. The employment contract further provided that title to the stock should pass on the day that the option was exercised. On the day that the option was granted, Fairchild stock had a market price of slightly over $9.00 per share.

Four years later, in August of 1945, when the market price of Fairchild had risen to nearly $13, the employment contract was amended to provide that upon exercise of the option Ogsbury would become obligated to the corporation for the option price, but that he might defer payment "to such time or times as said James S. Ogsbury shall elect, but not later than the termination of his employment by the Company or, in the event of his death during such

employment, within six months thereafter * * *". Transfer of title to the stock, and the acquisition by Ogsbury or his estate of all rights incident thereto, was to be deferred until payment of the option price to the corporation.

Several days prior to the termination of the option, on December 29, 1945, Ogsbury notified his employer of his election to exercise the option for the full 10,000 shares. The market price of the stock at this time was $15. Three years later, in December 1948, when the market price of the stock averaged about $15.25, Ogsbury tendered to his employer a check in the amount of $45,000 as payment in full for the shares which he had previously purchased. The corporation's transfer agent, at Ogsbury's direction, then delivered the shares to two banks to be held by them as collateral for loans totaling $50,000 made by them to Ogsbury.

Ogsbury, who died in February 1950, never reported any income arising from the above-detailed transaction, and his employer took no deductions with respect thereto. When the present proceeding was commenced in the Tax Court the taxpayer, Ogsbury's wife and the executrix of his estate, took the position that the stock option did not constitute income to Ogsbury, but after the Supreme Court's decision in Commissioner of Internal Revenue v. LoBue, 1956, 351 U.S. 243, 76 S.Ct. 800, 100 L.Ed. 1142, rehearing denied, 1956, 352 U.S. 589, 77 S.Ct. 21, 1 L.Ed.2d 69, she abandoned this position and then contended only that the Commissioner's assessment of a deficiency for the year 1948 was improper because she maintained her husband did not receive income with respect to the stock option in 1948 but in 1945 when the option was exercised. Her contention was sustained by the Tax Court, and the Commissioner petitioned for review.

The law is clear that the recipient of an employee stock option is taxable in the year that he receives an ascertainable economic benefit. "Section 22 (a) of the Revenue Act is broad enough to include in taxable income any economic

or financial benefit conferred on the employee as compensation, whatever the form or mode by which it is effected." Commissioner of Internal Revenue v. Smith, 1945, 324 U.S. 177, 181, 65 S.Ct. 591, 593, 89 L.Ed. 830, rehearing denied, 324 U.S. 695, 65 S.Ct. 891, 89 L.Ed. 1295; cf. Schaefer v. Bowers, 2 Cir., 1931, 50 F.2d 689, 691. Under certain circumstances the receipt by an employee of an option to purchase stock of the corporation by which he is employed will give rise to income in the year that the option was granted. Commissioner of Internal Revenue v. LoBue, supra; Commissioner of Internal Revenue v. Smith, supra; Mc-Namara v. Commissioner, 7 Cir., 1954, 210 F.2d 505. These cases indicate that in determining whether the receipt of the option is itself the receipt of income the controlling factor is whether the option has a determinable market value when received. Thus, if the option is not assignable, Commissioner of Internal Revenue v. LoBue, supra, or if, even though the option is exercised, the right to receive the stock is contingent, Commissioner of Internal Revenue v. Smith, supra, then receipt of the option does not give rise to income and the recognition of the income is deferred until a later time. Ordinarily, exercise of the option and payment for the shares so acquired will occur simultaneously, or nearly so, and the employee will be in receipt of income in his taxable year in which those events occur. See Connolly's Estate v. Commissioner, 6 Cir., 1943, 135 F.2d 64. In the present case, however, payment for the stock and acquisition of title thereto occurred in a year subsequent to the year when the option was exercised. It thus becomes necessary to decide whether Ogsbury's exercise of the option was a more significant event tax-wise than was the later issuance and transfer of title of the shares of stock.

■ Quite obviously it was in 1945 when the option was exercised that Ogsbury first realized measurable economic benefit. Prior to that time the benefit which he had obtained from the previously granted option was not taxable because the restriction upon its assignability precluded its valuation. Commissioner of Internal Revenue v. LoBue, supra. Immediately upon exercise of the option in 1945, however, Ogsbury possessed an assignable right. Its value was readily ascertainable. His subsequent payment for the stock and his acquisition of title thereto was merely the end result of the binding commitments made by Ogsbury and Fairchild when Ogsbury exercised the option in 1945. Manifestly Ogsbury's net worth was not changed when he acquired the shares in 1948.

To be sure, after he exercised the option in 1945 Ogsbury's right to acquire title to the stock optioned to him was contingent upon his ability to pay for it, but unlike the contingency in Commissioner of Internal Revenue v. Smith, supra, this contingency did not preclude a valuation of Ogsbury's contractual rights under the option. Cf. Schaefer v. Bowers, supra. Assuming that Ogsbury had been unable to raise sufficient funds with which to satisfy this contractual obligation, he nevertheless could have sold his right to acquire the stock. A right of such substantiality is of economic benefit to its owner. Inasmuch as the right arose because of Ogsbury's employment relationship it falls within the purview of § 22(a), 26 U.S.C.A. § 22(a), which requires inclusion in gross income of all "income derived from * * * compensation for personal service * * * of whatever kind and in whatever form paid * * *".

The Commissioner's insistence upon 1948 as the year when Ogsbury derived income in respect of his stock option is based upon the assumption that the income arising from the option was represented by the shares, and that until the shares were issued no income was created. The error in this assumption is in the failure to recognize the similarity between Ogsbury's rights after he exercised the option granted him and the rights of an employee who is granted an assignable stock option. Thus, assuming that Ogsbury's employer in 1945 had removed the restriction on assignability

from Ogsbury's option, the economic benefit so conferred upon Ogsbury by such an option would have been identical to the economic benefit conferred upon him after he exercised his right under the within option as it was amended in 1945. Clearly, in the assumed case, Ogsbury would have been in receipt of income in 1945. Commissioner of Internal Revenue v. LoBue, supra; Commissioner of Internal Revenue v. Smith, supra; McNamara v. Commissioner, supra. We see no sufficient reason here for according to Ogsbury's estate a different tax treatment than would be accorded it in the assumed case. At all times subsequent to December 29, 1945 Ogsbury had unrestricted use of a valuable economic right the value of which was easily ascertainable with definite certainty. Hence it was in the year 1945 that Ogsbury realized income.

Affirmed.