George J. BECKER and Isabelle Becker, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16350.

United States Court of Appeals
Third Circuit.

Argued April 6, 1967.

Decided June 9, 1967.

George J. Becker, pro se.

Crombie Garrett, Dept. of Justice, Tax Division, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Howard M. Koff, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before McLAUGHLIN and GANEY, Circuit Judges, and NEALON, District Judge.

## OPINION OF THE COURT

GANEY, Circuit Judge.

This case involves the length of the holding period of shares of stock. If they were held for less than six months, the gain derived from their sale by the petitioner-taxpayer is to be taxed as ordinary income. If held for more than six months, then the income is to be taxed as capital gain. There is no dispute about the date on which the taxpayer sold the stock. He maintains that he acquired substantial contractual rights to the stock, which later ripened into full ownership, on the day that he mailed his notice of acceptance of his option to the Minnesota Mining and Manufacturing Company, a corporation organized under the laws of Delaware. The Company's main office is in St. Paul, Minnesota. It has a branch office in Ridgefield, New Jersey, where taxpayer resides and was employed as a sales manager by the Company.

The facts are not in dispute. On May 13, 1958, the Company and the taxpayer entered into a stock option purchase agreement. The pertinent provisions of that agreement are as follows:

"The COMPANY desiring to afford EMPLOYEE an opportunity to purchase shares of its Common Stock * * * through the Executive Restricted Stock Option Plan, approved by the stockholders * * * thereby providing the EMPLOYEE with an added incentive to continue his services with the COMPANY and to intensify his interest in the success of the COMPANY.

"Now, THEREFORE, In consideration of the mutual covenants hereinafter set forth and for good and valuable considerations, the parties hereto have agreed, and do hereby agree, as follows:

\*　　\*　　\*　　\*　　\*　　\*

"10.   EXERCISE OF OPTION.

"Subject to the terms and conditions of this agreement, the OPTION may be exercised by written notice to the COMPANY, 900 Bush Avenue, St. Paul 6, Minnesota, attention of the Treasurer, which notice shall state the election to exercise the OPTION and the number of shares in respect of which it is being exercised, shall fix a date (not less

than (5) business days from the date such notice is received by the COMPANY) for the delivery of the certificate or certificates for said shares, shall be accompanied by a certified or bank cashiers check for payment in full of the purchase price for said shares, shall be signed by the person or persons so exercising the OPTION * * *."

On June 2, 1960, the taxpayer wrote a letter to the treasurer of the Company in which he requested information as to the cost and manner of payment for exercising his stock option and the existing credit in his stock option account. The letter was placed in the Company mail at the Ridgefield branch in Ridgefield, New Jersey.

He received an inter-office memorandum, dated June 6, from the Company. The memorandum informed him that if he wished to exercise his option he should complete the lower part of an enclosed form and forward it to the Company's treasurer in St. Paul, Minnesota, with a check for $3,172.89 representing the balance due on the payment of the 150 shares of stock. The form, in addition to stating that the undersigned elects to exercise his option, contained blank spaces for setting forth when, where and in whose name the stock was to be issued.

On June 14, 1960, the taxpayer placed the completed form in the Company mail at the Ridgefield branch office, accompanied by a check for the balance due. No evidence was presented as to the exact date on which the form and check were received by the Company's treasurer in St. Paul, Minnesota, but the earliest possible date for such receipt was June 15, 1960. The Company recorded the transaction in its books on June 20, 1960, and requested its stock transfer agent to issue 150 shares to the taxpayer. He sold the stock through the New York Stock Exchange on December 15, 1960.

Because the stock option agreement did not expressly provide that written notice of the exercise of the option would become binding on the Company at the time it was placed in the mails, the Tax Court, in determining that there is a deficiency in income tax due from the taxpayer for the year 1960, held that: "The deposit of the election form in the company mail at Ridgefield was not such an effective exercise of the option as would justify the conclusion that petitioner 'acquired' the stock on that day." 46 T.C. 613 (1966).

The rule is well recognized that in computing the period during which stock, obtained as the result of a restricted stock option agreement, was held, the day upon which it was acquired by a taxpayer is to be excluded, and the day on which it was sold is to be included. Sheets v. Selden's Lessee, 69 U.S. (2 Wall.) 177, 190, 17 L.Ed. 822 (1864), E. T. Weir, 10 T.C. 996, 1000–1001, aff'd per curiam 173 F.2d 222 (C.A.3, 1949); 3B Merten's, Fed.Income Tax § 22.104, pp. 652–653. The Commissioner concedes, as he must, that the taxpayer "acquired" the stock when the taxpayer's acceptance became binding on the Company. See C. I. R. v. LoBue, 256 F.2d 735 (C.A.3, 1958), affirming 28 T.C. 1317; C. I. R. v. Ogsbury's Estate, 258 F.2d 294, 72 A.L.R.2d 1348 (C.A.2, 1958); Swenson v. C. I. R., 309 F.2d 672, 7 A.L.R.3d 373 (C.A.8, 1962)—the last cited case involved an option similar to the one before us with the same Company. However, he maintains that this did not occur until the taxpayer's notice of his election to exercise his option was received by the Company in St. Paul.

The earliest possible day for the Company to have received notice of the taxpayer's exercise of his option was June 15, 1960. But in order for the taxpayer's holding period to be more than six months, it must have begun on, or that his substantial contractual rights in the stock have been acquired prior to, that date. We agree with the taxpayer that under the circumstances of this case he acquired substantial contractual rights in the stock when he placed his notice of acceptance, with the balance of the purchase price, in the Company mail on June 14, 1960. See Shubert

Theatrical Co. v. Rath, 271 F. 827, 834 (2 Cir., 1921). The law of New Jersey, the State where taxpayer resides and the offer was accepted, supports this conclusion. See Martindell v. Fiduciary Counsel, 133 N.J.Eq. 408, 30 A.2d 281, 284 (1943). There the Court of Errors and Appeals of New Jersey, in holding under the circumstances of that case that there was compliance with the optionee's duty of communication of her mental assent to the terms of the offer embodied in the option, said: "In the absence of provision to the contrary, it suffices if the transmission of the acceptance be done by mail. It is then to be presumed that such is the medium of communication contemplated by the parties themselves. In that situation, the aggregatio mentium occurs when the letter of acceptance is deposited in the post office. Hallock v. Commercial Insurance Co., 26 N.J.L. 268, affirmed 27 N.J.L. 645, 72 Am.Dec. 379."

The Commissioner maintains that the law of Minnesota as reflected in the case of Hoban v. Hudson, 129 Minn. 335, 152 N.W. 723, L.R.A.1916B, 1114 (1915)[1], is to be applied here. But even if we assume, as the Commissioner believes, that Minnesota has a greater interest in the option agreement than do the other states, we think a Minnesota Court of state-wide jurisdiction, if it had the problem before it, would restrict the holding in *Hoban* to the particular facts of that case and conclude, as we have, that the acceptance of the option was complete when the notice was placed in the Company mail.

Here the relationship between the optionor and optionee was that of employer and employee; the mail was used as the medium of notifying the employee of the option agreement; a time limitation in which to accept was not mentioned in the option and time was not stated to be of the essence; a form for obtaining the desired information for accepting the option was mailed to the employee by the Company in response to the employee's inquiry, by inter-office correspondence; the form was promptly filled out by him and placed in the Company mail, along with a check, at the Company's branch office in New Jersey; the optionee did all that was required of him under the agreement; and the rights of third parties were not involved.

The decision of the Tax Court will be reversed and the case remanded with a direction to render a decision of no deficiency.

1. In this case plaintiff, M. Hoban, was given an option to receive a refund of the amount paid by him for certain shares of stock of a copper company, provided he gave written notice of his election to have the refund on or before April 8, 1912. The manner of giving notice was not prescribed in the option agreement which stated that "time is of the essence of this agreement." The defendant, S. H. Hudson, guaranteed the performance of the option agreement on the part of the copper company. When plaintiff purchased the shares, the certificate, together with the option agreement and the guarantee, was mailed from Willmer, Minnesota, enclosed in a letter signed by Martin E. Tew, the first vice-president of the copper company.

On April 6, 1912, plaintiff was informed by the defendant where the officers of the copper company were to be found. On or about the same day he mailed three notices in Benson, Minnesota, where he resided, to Martin E. Tew of his election to accept the refund: One was addressed to Los Angeles, California, and reached Tew on April 10; the second to Tucson, Arizona, which was not delivered but returned to plaintiff; and the third to Willmer, Minnesota, which place it reached on April 7, and was forwarded to Tew in Los Angeles, reaching him on April 11. The trial court found that notice in compliance with the terms of the option was not served in time upon the copper company and hence there was no liability on the part of the guarantor.

The Supreme Court of Minnesota, in affirming, held (152 N.W. at 724): "* * * [I]n the absence of anything to the contrary in the contract, the mail could be used as the medium of service, but, if it is used, the service is not made until the notice is in the hands of the one intended to be served."