### GARDNER–DENVER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5203.

Circuit Court of Appeals, Seventh Circuit.
Feb. 5, 1935.

Robert Ash, of Washington, D. C. (Hopkins, Sutter, Halls & De Wolfe, of Chicago, Ill., of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for respondent.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

ALSCHULER, Circuit Judge.

Petitioner challenges the order of the Board of Tax Appeals determining its income tax for the taxable year 1928.

In 1923, and in some of the subsequent years, two corporations to which petitioner subsequently succeeded, and whose obligations it assumed, submitted to certain of their employees propositions to sell to them shares of stock in the corporations at specified prices, which were then approximately their market value. There was some difference in details of the propositions, of no materiality here. The propositions were, in substance, that the accepting employees pay monthly upon the purchase price a sum within a fixed minimum and maximum during continuance of their employment; that cash dividends declared upon the stock be applied, as declared, upon the purchase price; that semiannually the employees be charged with interest at 6 per cent. per annum on so much of the purchase price as remained unpaid, and that they be credited with interest at 6 per cent. on the cash payments and the dividends; that the purchase price be thus fully paid within five years, and that at the end of five years, and not before, if the purchase price be then fully paid, and the employees remained in the employment, the stock be delivered to the employees. It was specified that if during the 5-year period the employment ceased, the contract should be terminated and the employee be refunded the amount he had actually paid upon the stock, with 6 per cent. interest thereon; but that he should not then be entitled to the dividends, nor be charged interest on deferred payments. It was specified that until the expiration of the 5-year period, and the full payment of the stipulated price and delivery of the stock, the employee had no right to vote the stock nor to assign any interest in it.

Various of the employees, including officers of the two corporations, to whom the propositions also ran, signified their acceptance of the propositions, and made their payments upon the stock as provided. In 1928, various of the contracts had been paid up through payments and credits thereon, and the stock was, in that year, accordingly issued and delivered to these employees. The subscription price of the stock which was so issued was $373,824; and the market value of the stock in 1928 was $806,037.50. Petitioner contends that the difference of $432,213.50 should be deducted from its gross income for 1928, upon the theory that this difference represented additional compensation to the employees for their services during the period between the date of their subscription for the stock and its delivery, and as such was a deductible expense of petitioner for the taxable year 1928. It insists also that the dividends declared and credited to the subscription price of the stock during that period, amounting to $40,990.30, was likewise additional compensation to these employees, and deductible accordingly as an expense in that year. The Board of Tax Appeals rejected both contentions.

Petitioner maintains that while the propositions of employers and the acceptances by the employees are in the form of sale and purchase of the stock, all of the facts indicate that they were not such in essence; but that instead they disclose a purpose of making inducements to the employees for remaining in the employ, and thereby minimizing the labor turnover, to the distinct advantage of the employer, and that such advantage would be and was compensated to the employees by giving them the increase in value of the stock as a further compensation to them for their loyalty and continuous service during the period.

There have been cases adjudicated where there was involved the question of bonus or additional compensation to employees through transactions whereby they purchased stock from their employers for less than market value. Without citing or discussing them, we think they do not have application to a situation such as this. Nor are those cases in point where the question was as to the taxability to officers and employees of the excess in value of such stock over what such officers or employees had paid therefor.

The finding here was that the market value of the stock at the time the agreement was made was substantially the stipulated subscription price to be paid by the employees. While there would thus at that time have been no advantage to the employees in respect to the purchase price, it is plain that any advantage to them consisted in the very easy terms on which they might pay for and acquire the stock.

If at the time the agreements were made the market value of the stock had been substantially higher than the stipulated price, there might be ground for the contention that, notwithstanding the form of the contract, that difference was in contemplation as a bonus or added compensation to the employees, which, if reasonable, might be treated as such additional compensation or bonus, and deductible accordingly from gross income. See Article 128, Regulations 74 (promulgated under Revenue Act of 1928). But where, as here, the conveyance of the stock was pursuant to an agreement between employer and employees for conveyance of stock to the employees when a specified price was paid, a subsequent increment in the value of the stock cannot be regarded as contemplated or actual additional compensation to the employees. And in no event would such subsequent advance in value represent loss or outlay or expense to the corporation itself.

The subsequent history of the stock, whether it advanced or declined in value, could not have been contemplated as affecting in any manner the compensation of the employees—as bonus or additional compensation if the stock advanced, or as nothing at all of that nature if it did not. We are not here concerned with the manner of treatment for taxation of a profit to the employees under such circumstances.

We are not greatly impressed with petitioner's contention that, because this contract might have been terminated by either party before its consummation by full payment of the purchase price and delivery of the stock, it cannot be treated as a sale until such consummation. It is true that the employee might, if he chose, before the stock was paid for in the manner specified, have terminated the agreement and received back the money he had paid, with interest; and the employer might also, under the strict terms of the agreement, by discharging the employee have terminated the contract and relieved itself from further obligation thereunder.

But we do not believe that under the issues here there should be taken into consideration the possible contingency of the employer doing so harsh and inequitable a thing as to discharge the employee for the purpose only of preventing his completion of the specified payments and avoiding the obligation to convey to him the stock when paid for as specified. Indeed, the corporations did not undertake to deal thus inequitably, but the contract of sale was carried out by delivering the stock as agreed, notwithstanding its substantial advance in value during the interim.

The Board found, in effect, that all those concerned treated the transaction from the beginning as a sale of the stock to the employees upon credit as indicated; and that the corporate books and accounts of the transactions in all respects treated them as sales, without disclosing anything to indicate that at any time from the acceptance of the proposition was there involved or contemplated any element of added compensation, actual or potential, to these employees.

Petitioner having deliberately and knowingly considered and treated the accepted propositions as sales to the employees from the time of the acceptance, we do not think that it should now be permitted to regard them as something different for the purpose of enabling deduction to be made from gross income.

It may also be noted that petitioner sought no deduction on account of transactions with corporate officers of these corporations who had, in the same manner and at the same time and on the same terms, subscribed to the same kind of stock, and who received their stock during the taxable year in question.

What we have said is applicable as well to the contention for deduction of dividends declared on this stock and credited to the employees on the purchase price. The dividends are an incident of ownership of the stock, and however their payment may have advantaged the employees they did not represent outlay or expense to the corporations or to petitioner, and they are not deductible from gross income as claimed.

The facts are set forth in greater detail in the findings of the Board, to which, as well as to the Board's opinion, appearing in 27 B. T. A. 1171, we refer.

The order of the Board of Tax Appeals is affirmed.