## VAN DUSEN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 11699.

Circuit Court of Appeals, Ninth Circuit.

March 17, 1948.

Rehearing Denied April 16, 1948.

James L. Chapman and John M. Cranston, both of San Diego, Cal., for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., and George A. Stinson, Lee A. Jackson, Maryhelen Wigle, and Harry Marselli, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, DENMAN, and BONE, Circuit Judges.

BONE, Circuit Judge.

Petitioner seeks review of a decision of the Tax Court. The question presented is whether petitioner realized taxable income when, pursuant to an option granted by the president of the corporation by which petitioner was employed, petitioner purchased stock of the corporation from the president personally at less than market value.

The relevant facts were in large part stipulated by the parties. On December 10, 1934 petitioner entered the employ of the Consolidated Aircraft Corporation (hereinafter referred to as the corporation) as its factory manager at a salary of $9,000 per year, pursuant to an oral agreement of December 7, 1934. Petitioner remained an employee of the corporation throughout the period herein involved. On December 7, 1934, R. H. Fleet, president of the corporation, gave to petitioner an oral option to purchase from Fleet stock of the corporation. A written option agreement was executed on December 10, 1934, which provided in essential part as follows:

"In connection with your employment this day by our company, it gives me much pleasure to confirm my offer to sell you fifty (50) shares of my personal common stock in this corporation at the price of $5 net per share each and every month for the next ten years (unless I die or cease to be an employee of Consolidated, in which event this is modified against me or my

estate to five years from this date), this right to hold, however, only so long as you are retained in the company's employ.

"You are under no obligation to purchase or to hold after purchase, any such stock under this offer; failing to purchase any month you forfeit nothing but the right to buy that month's quota of 50 shares."

The option was terminated on December 31, 1941, by written agreement.

On December 7, 1934 the corporation's common stock sold on the New York Curb Exchange for a high of 9½ and a low of 8⅞. As of that date R. H. Fleet owned 261,481 of the 574,400 outstanding shares of the corporation's common stock, and he continued to own a substantially proportionate amount of the shares during the tax years here involved. Petitioner purchased stock from Fleet under the terms of the option agreement, as follows:

| Year | Shares | Market value when pur- chased | Cost |
|------|--------|-------------------------------|------|
| 1938 | 600 | $10,653.75 | $3,000.00 |
| 1939 | 750[1] | 14,484.38 | 3,750.00 |
| 1940 | 400 | 9,875.00 | 2,000.00 |
| 1941 | 600 | 18,000.00 | 3,000.00 |

Fleet claimed no deductions from gross income for the years 1938–1941 for the difference between the market value of the stock and the sale price to petitioner, but reported as income for those years the difference between the basis of the stock to him and the sale price to petitioner. The corporation claimed no deductions from gross income for the years 1938–1941 with regard to the sales of its stock by Fleet to petitioner, but deducted only the salary paid by it to petitioner for those years (which salary ranged from over $15,000 in 1938 to over $31,000 in 1941).

The Tax Court determined that the option was given by Fleet to petitioner to secure his services for the corporation, and that the difference between the amount paid for the stock and its fair market value at the dates of purchases was in the nature of compensation for services rendered or to be rendered by petitioner, hence taxable income.[2] This conclusion is assailed by petitioner as without basis in law or fact. We do not agree.

The applicable statute is Section 22(a) of the Internal Revenue Code, which defines gross income as including "gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid * * *" 26 U.S.C.A.Int. Rev.Code, § 22(a).

Treasury Regulations 103, Sec. 19.22(a)-1, provides in part:

"If property is transferred * * * by an employer to an employee, for an amount substantially less than its fair market value, regardless of whether the transfer is in the guise of a sale or exchange, such * * * employee shall include in gross income the difference between the amount paid for the property and the amount of its fair market value to the extent that such difference is in the nature of (1) compensation for services rendered or to be rendered * * *"

The Supreme Court has interpreted the aforementioned statute in this language: "Section 22(a) of the Revenue Act is broad enough to include in taxable income any economic or financial benefit conferred on the employee as compensation, whatever the form or mode by which it is effected." Commissioner v. Smith, 324 U.S. 177, 181, 65 S.Ct. 591, 593, 89 L.Ed. 830.

In the Smith case the Supreme Court sustained the finding of the Tax Court that the taxpayer had been given a stock option as compensation for services and the conclusion that taxable income resulted upon the taxpayer's exercise of the option to purchase shares at less than market value. That decision and the expansive purview of Section 22(a) appear to us to provide full legal warrant for the Tax Court's decision in the case at bar.

[1] The reason why this year's purchases evidently exceeded fifty shares per month does not appear from the record.

[2] Petitioner and his wife, both residents of the State of California, filed separate income tax returns for the years 1938 through 1941. Respondent assessed similar deficiencies against both petitioner and his wife, who was also a petitioner below. The parties have stipulated that the wife's case shall be governed by this decision on appeal.

Petitioner attempts to distinguish the Smith case upon the ground that there the option moved directly from the employer to the employee, while in the instant case an employer-employee relationship did not exist between the grantor of the option and petitioner. This argument is not persuasive.

We need not discuss respondent's suggestion as to the possible pertinence of the principle of contract law respecting third party beneficiary contracts. We need look only to the applicable statute. Section 22(a), supra, contains no requirement that remuneration must emanate solely from the employer in order to be taxable income—it speaks of compensation for personal services "of whatever kind and in whatever form paid"—and we can spell out from the statute no such requisite.

Furthermore, it has specifically been held that the fact the grantor of the compensation is not technically the recipient's employer is immaterial, if compensation for services was in fact intended. Schumacher v. United States, 55 F.2d 1007, 1011, 74 Ct.Cl. 720; Bass v. Hawley, 5 Cir., 62 F.2d 721, 723; Batterman v. Commissioner, I.C. 1213, affirmed 6 Cir., 142 F.2d 448, certiorari denied 322 U.S. 756, 64 S.Ct. 1266, 88 L.Ed. 1585.

We then are faced with the contention of petitioner that Fleet did not intend to compensate petitioner wherein he relies upon Bogardus v. Commissioner, 302 U.S. 34, 58 S.Ct. 61, 65, 82 L.Ed. 32. In that case there had been a payment of money, designated a 'gift or honorarium," by a holding company (Unopco) to a former employee of an operating company (Universal), the parties to the action stipulated that the payment was not made for services, and the Court held that the payment was a gift, not compensation. While that decision unquestionably stands for the principle that intention is the controlling factor in ascertaining whether there has been compensation, petitioner can find little solace in the language of the Court as follows:

"* * * most significant is the further stipulated fact that the disbursements were not made or intended to be made for any services rendered or to be rendered or for any consideration given or to be given by any of said employees * * * to said Unopco Corporation or to any of its stockholders. If the disbursements had been made by the Universal company, or by stockholders of that company still interested in its success and in the maintenance of the good will and loyalty of its employees, there might be ground for the inference that they were payments of additional compensation. * * * There is entirely lacking * * * the incentive of anticipated benefit of any kind beyond the satisfaction which flows from the performance of a generous act." 302 U.S. 34, 41, 58 S.Ct. 61, 65, 82 L.Ed. 32.

In the case at bar the Tax Court declared that the benefit conferred on petitioner was not a gift by Fleet, and petitioner apparently does not assert there was a gift. At the hearing below Fleet's testimony was to the effect that the option was given as an inducement to petitioner to enter the employ of the corporation. It is obvious that Fleet, as president and a large stockholder of the corporation, was vitally interested in the corporation's success and that benefit would redound to him from securing and assuring petitioner's productive efforts.

The option contract was expressly made "In connection with your employment this day by our company," and was to be effective "only so long as you are retained in the company's employ." No language could more clearly speak in terms of consideration for employment. If petitioner's employment ceased, the opportunity to exercise the option then also ceased. The rendition of services by petitioner was the quid pro quo for his obtaining stock from Fleet at bargain prices. In the words of the Tax Court, "Thus it is there was a vital causal connection between petitioner's employment and his rendition of services and the purchase of the stock at favorable prices."

Petitioner asserts that while a grantor may intend to induce action of a grantee by conferring a benefit on him, it does not follow that compensation is intended so as to make the benefit taxable income to the grantee. Cited in support of this proposition are the following cases: Ed-

wards v. Cuba Railroad, 268 U.S. 628, 45 S.Ct. 614, 69 L.Ed. 1124, wherein subsidy payments made by the Cuban government were held to have been made to aid the taxpayer in construction of a railroad and to reimburse it for capital expenditures, not made to compensate the taxpayer for services; Helvering v. American Dental Co., 318 U.S. 322, 63 S.Ct. 577, 87 L.Ed. 785, in which case creditors' gratuitous cancellations of indebtedness without consideration from the debtor were held to constitute gifts and not income to the debtor; and McDermott v. Commissioner, 80 U.S.App.D.C. 176, 150 F.2d 585, in which a prize paid from the income of a charitable or educational trust was held not income but a gift to the recipient. While the principle may be spelled out from the Cuba Railroad and McDermott cases that a payment may be given as inducement yet not be compensation to the payee, none of these cases involved a situation remotely resembling the circumstances in the case at bar. Here, there was not only an inducement proffered to petitioner, but his realizing any benefit therefrom was conditioned upon and in consideration of his rendition of services to his employer. There is obviously no distinction to be drawn between payment for services already "rendered or to be rendered" in the future. Edwards v. Cuba Railroad, supra, 268 U.S. at page 633, 45 S.Ct. 614, 69 L.Ed. 1124; Bogardus v. Commissioner, supra, 302 U.S. at page 41, 58 S.Ct. 61, 82 L.Ed. 32; Treasury Regulations 103, Sec. 19.22(a)-1, supra.

It may additionally be noted that there is a presumption that any beneficial payment to an employee beyond his salary is intended as additional compensation. Commissioner v. Bonwit, 2 Cir., 87 F.2d 764, certiorari denied 302 U.S. 694, 58 S.Ct. 13, 82 L.Ed. 536; Walker v. Commissioner, 1 Cir., 88 F.2d 61; Willkie v. Commissioner, 6 Cir., 127 F.2d 953, certiorari denied 317 U.S. 659, 63 S.Ct. 58, 87 L.Ed. 530.

We conclude that there was ample evidentiary support for the conclusion that Fleet intended to compensate petitioner. In the light of this evidence, the fact that Fleet failed to take income tax deductions for compensation paid on account of sales under the option, is not of compelling significance.

Petitioner presents this alternative argument: assuming that compensation was received, it was realized at the time the option was granted and not at the times the stock was purchased. The rationale of the argument—which it may be observed has not been suggested prior to this appeal—is that the market price exceeded the option price of the stock on the day the option was given, the option therefor had value at that time, and, under the decision in Commissioner v. Smith, supra, the value of the option itself was in these circumstances the only taxable income realized by petitioner. We find this theory to be inadmissible upon the facts of this case.

The Supreme Court in the Smith case stated:

"When the option price is less than the market price of the property for the purchase of which the option is given, it may have present value and may be found to be itself compensation for services rendered. * * * It could do so only as it might be the means of securing the transfer of the shares of stock from the employer to the employee at a price less than their market value, or possibly, which we do not decide, as the option might be sold when that disparity in value existed." 324 U.S. 177, 181, 65 S.Ct. 591, 593, 89 L.Ed. 830.

In the instant case the option could not operate to secure the transfer of more than fifty shares of stock to petitioner in the month it was given or in any month thereafter. Aside from the fact that petitioner could command the transfer of any shares only so long as he remained in the corporation's employ—an unpredictable contingency at the time the option was granted—there exists no basis for arriving at the value of the option as respects the 2,350 shares which were acquired under it in later years, by using the value of those shares at the option date. Furthermore the restrictive conditions of the option together with the possibility of decline in market value of the stock during the potential purchase period, lead logically to the conclusion that the disposal value of the

option could scarcely have been more than nominal at the time that it was granted.

The Tax Court did not find that the option itself was given or intended as compensation for petitioner's services, but expressly determined that the compensation was the difference between the amount paid for the stock and its fair market value at the several dates of purchase.

From the evidence, the inference seems inescapable that there was an "economic or financial benefit conferred on the employee as compensation" when petitioner exercised the option to make bargain purchases of the corporation's stock. Resolution of this case appears to us to involve mixed questions of law and fact which would appear to justify sustaining the Tax Court's decision without the considerations and discussion in which we have indulged. Dobson v. Commissioner, 320 U.S. 489, 501, 502, 64 S.Ct. 239, 88 L.Ed. 248; Commissioner v. Scottish American Co., 323 U.S. 119, 124, 65 S.Ct. 169, 89 L.Ed. 113; Trust of Bingham v. Commissioner, 325 U.S. 365, 370, 65 S.Ct. 1232, 89 L.Ed. 1670, 163 A.L.R. 1175. In any event, we conclude that the Tax Court applied the law correctly and that its decision is supported by substantial evidence.

Affirmed.