JOSEPH KANE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ROSE KANE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 50587, 52755, 52756. Filed February 29, 1956.

*Sidney Gelfand,* for the petitioners.
*S. Jarvin Levison, Esq.,* for the respondent.

OPINION.

HARRON, *Judge:* The chief question is whether the option granted by Arde Bulova, the chairman of the board of directors of Bulova Watch Company, was given for the purpose of enabling Rose Kane to acquire a proprietary interest in that company, or was given as additional compensation to Joseph Kane for his services to Bulova Company, to be received in each year in which the option was exercised. The petitioners contend that the option was granted for the purpose of giving Rose a proprietary interest in the Bulova Company, and that, therefore, no taxable income, under section 22 (a) of the 1939 Code, was realized in the years in which Rose exercised the option by either Rose or Joseph Kane.

In the event the Court should sustain the contention of Joseph Kane that he did not receive taxable income under section 22 (a) in the years when Rose exercised the option, the respondent contends that Rose received taxable income, under section 22 (a) of the Code, in 1947, which is the only year before this Court involving Rose, because the option was intended as compensation to her for the trouble and inconvenience of moving from Cincinnati to New York and so that Bulova Company would have the services of Joseph Kane in New York.

All of the questions arise under section 22 (a) of the 1939 Code.[3]

_____
[3] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains, or profits and income derived from any source whatever. * * *

The questions to be decided are questions of fact. *Abraham Rosenberg*, 20 T. C. 5, 8, and 9.

The petitioners rely upon *Abraham Rosenberg, supra*, and *Commissioner* v. *Straus*, 208 F. 2d 325.

It is pointed out that the respondent does not contend that his amendment to Regulations 111, section 29.22(a)-1, contained in T. D. 5507, dated April 12, 1946, 1946-1 C. B. 18, and elaborated upon in I. T. 3795, 1946-1 C. B. 15, apply to the stock option which is involved in these proceedings. The respondent recognizes that the stock option granted by Arde Bulova was given on August 17, 1944, and, accordingly, it is a stock option granted before February 26, 1945, to which the provisions of his regulations as they stood before his amendment apply. See *Abraham Rosenberg, supra*, pp. 9 and 10. The respondent relies upon the old regulations, the pertinent part of which is quoted in the margin.[4]

We shall consider first the question presented in the proceedings of Joseph Kane. The respondent argues that the evidence supports a finding that the option was compensatory in nature. He argues that the evidence establishes that Arde Bulova granted the option, orally, at the time when employment of Joseph by Bulova Company first was being discussed; that the stock option was granted, orally, prior to the execution of the final employment agreement; that when the agreements were reduced to writing, the stock option agreement was tied to the agreement setting forth the terms of Joseph's employment; that the option was to be exercised during the period of Joseph's employment; and that the dominant motive underlying Arde Bulova's granting the stock option was to provide the "clincher" in obtaining Joseph's services for Bulova Company.

The respondent relies upon the rule that an employee is taxable upon the economic benefits realized upon the exercise of a stock option which was granted as compensation for services rendered, or to be rendered, by the employee. *Commissioner* v. *Smith*, 324 U. S. 177; *Dean Babbitt*, 23 T. C. 850. The respondent cites the foregoing cases and, also, *Charles E. Sorensen*, 22 T. C. 321. The respondent also contends that the petitioner, Joseph Kane, cannot avoid the tax consequences under section 22 (a), if the economic benefits of the stock option constitute additional compensation for his services to Bulova Company, merely because the option was given by Arde Bulova rather than by Joseph's employer, Bulova Company. On this point, he relies on *Wanda V. Van Dusen*, 8 T. C. 388, affd. 166 F. 2d 647.

---

[4] Regs. 111, Sec. 29.22(a)-1. WHAT INCLUDED IN GROSS INCOME.— * * *

If property is transferred by a corporation to a shareholder, or by an employer to an employee, for an amount substantially less than its fair market value, regardless of whether the transfer is in the guise of a sale or exchange, such shareholder or employee shall include in gross income the difference between the amount paid for the property and the amount of its fair market value to the extent that such difference is in the nature of (1) compensation for services rendered or to be rendered * * *

The issue to be decided places upon the Court the difficult task, in view of the record before us, of determining whether it was the intention of the parties that the option to purchase stock from Arde Bulova was to provide additional compensation to Joseph for his services, or was to give a proprietary interest in the Bulova Company to a member of Joseph's family, namely, his wife. The determination of such intent, which is a question of fact, is dependent upon the evidence in the case to be decided. "Each case must be decided upon its own peculiar facts, and facts which have been deemed significant under some circumstances may serve as guides, but are not necessarily controlling." *Abraham Rosenberg*, *supra*, p. 10.

In their testimony, both Arde Bulova and Joseph Kane have denied emphatically that it was intended that any economic benefit which might be derived from exercise of the option was intended to be compensation for Joseph's services to Bulova Company. Joseph denies that he had any discussion with Arde Bulova about the terms of his employment by the company, and Arde Bulova denies having had any discussions with Joseph about his employment by the company, or about the stock option. Joseph, Rose, and Arde testified that the discussions about the stock option were between Rose and Arde exclusively and solely. Rose and Arde testified that the stock option was suggested by Arde and that neither Joseph nor Rose asked for the stock option. Arde testified that he had given friends and relatives opportunities to buy Bulova stock, and that he wanted Rose to have an opportunity to make an investment in the Bulova Company because it was his belief that such investments served to establish good "family" relations with the company. Also, there is testimony that Rose was not happy about moving from Cincinnati back to New York City, that she expressed dissatisfaction, and that Arde Bulova voluntarily offered her the option to make her satisfied.

All of the testimony of all of the witnesses has been carefully considered. There are inconsistencies in Arde Bulova's testimony. We are not impressed by Rose's professed dissatisfaction and alleged unhappiness about leaving Cincinnati, at least as a serious factor in the granting of the stock option. Rose finally testified that she would have gone to New York with her husband even if Arde Bulova had not granted her the stock option. There are statements appearing in the written agreements of August 17, 1944, which are in conflict with testimony of Joseph Kane and Arde Bulova. It is stated in the employment agreement of Bulova Company that Joseph Kane had had conversation with both Arde Bulova and John Ballard about his employment. It is stated in the option agreement that one of the purposes of that agreement was to get Joseph Kane to work for Bulova Company, and that he had been hesitating to accept employment in

the company. All of these facets of the record have been taken into account.

The limited question to be decided is whether the option was given with the intention that any economic benefits which might be derived were to constitute additional compensation to Joseph for services rendered or to be rendered.

The petitioner Joseph Kane has testified that the only agreement relating to and fixing his compensation is the agreement which he made with the Bulova Company by which his compensation is stated to be a weekly salary, starting at $400 in the first year, increasing to $500 in the second year, and increasing to $600 in the third year, plus, in each year, one-half of one per cent of net profits after taxes, that he was entirely satisfied with the compensation so stated in the agreement, and that the agreement gave him better compensation than he had received from Gruen. The evidence shows that although Joseph had been receiving a "voluntary bonus" from his former employer, Gruen, the share of profits which he actually received from Bulova Company in 1945, 1946, and 1947 exceeded the amounts of the annual bonus which he had received from Gruen. For example, the amounts of Joseph's share of the net profits of Bulova Company in 1945, 1946, and 1947 amounted to $13,940, $18,940, and $24,542, respectively, which amounts exceeded the voluntary bonus received from Gruen in any of the years 1940 through 1943. Also, the basic salary paid by Bulova Company to Joseph in 1946 and 1947, namely, $26,000 and $31,200, exceeded his highest basic salary from Gruen in 1943. Thus, the evidence lends support to Joseph's testimony that the employment agreement with Bulova Company was a better one than the contract with Gruen.

After giving careful consideration to the testimony presented by the petitioners, there remain, nevertheless, obvious considerations which cannot be ignored. There is some background which is part of the entire situation which impresses us as having as much importance as the explanations given by the petitioners and Arde Bulova. The business of the Bulova Watch Company was directed by the father of Arde Bulova, if not developed by Arde Bulova's father. Arde Bulova testified that originally the stock of Bulova Watch Company was closely held, and from his testimony we understand that he meant, by the members of the family of Arde Bulova's father. It is established here that in 1944 Arde Bulova was the largest single stockholder of the company. It also is clear from Arde Bulova's testimony that he was the leading director of the company. He testified that after his father died he made Ballard the president of the company. It must be concluded that in 1944 Arde Bulova exercised the dominant position in the management of Bulova Company.

In less than a year after Arde Bulova gave Rose Kane the option to purchase some of his shares of stock, there was a 2-for-1 split in Bulova stock. We cannot, in view of Arde Bulova's position in the company, regard the happening of the stock split as an event which was wholly unthought of by Arde Bulova when he gave the option to Rose. In fact, he testified that he told Rose that if she took the option it would make her "rich." After the stock split, the option enabled Rose to purchase up to 2,000 shares of stock of Bulova Company at $18.50 per share in a rising market. A matter involving a stock split is one which is peculiarly within the knowledge of the highest officials of a corporation.

All of the contentions of the petitioners invite the taking of a very naive view about all of the circumstances to which we are unable to subscribe. One aspect of these proceedings comes within the oft-repeated pattern of action by the wife of a taxpayer who is directly concerned in a business transaction in which the wife would have no interest other than the benefits to her husband and to her family. Where a wife has assets in her own name, it is an easy matter for her, for her husband's convenience, to use her assets in the same way that her husband could use his own assets, and where some tax consequence to the husband may be involved, the husband's convenience is served if the wife enters into a transaction. Many instances have come before the courts where the Commissioner has applied the broad provisions of section 22 (a) to protect the fisc, and where substance rather than form has been held to be determinative. In these proceedings the petitioners have the burden of proof which is, specifically, to prove that there was no vital causal connection between the employment of Joseph Kane and his rendition of services and the purchase of the stock at favorable prices, taking into account all of the circumstances. See *Wanda V. Van Dusen, supra.*

We are left with a conviction that the explanations of the petitioners and of Arde Bulova do not serve to discharge the petitioners of their duty under their burden of proof. There are patent weaknesses in the explanations which have been given.

In the first place, we must reject wholly the emphasis upon Rose's alleged unhappiness about moving from Cincinnati to New York City. Her professed objections to a change in the location of her home may have existed, but in deciding the issue presented, they are entirely immaterial and irrelevant.

Also, the alleged desire of Arde Bulova, a generous one, simply to give Rose an opportunity to purchase Bulova Company stock is also irrelevant and immaterial even though he may be a person of magnanimous impulses. Since the market price of Bulova Company stock on August 17, 1944, was less than $37 per share, which was the

option price, and since Rose had a portfolio of securities which had a value of around $90,000, Arde Bulova's willingness to sell her some of his stock could have been satisfied by simply offering to sell stock to Rose without giving Rose a favorable option price at which she could purchase stock over a period of 3 years, provided Joseph, her husband, was employed by Bulova Company. The crux of the matter is that Arde Bulova gave Joseph's wife a favorable option price which was conditioned upon Joseph's employment. He has not testified that he ever gave any other friend, or relative, an option price when he offered them the opportunity to purchase any of his Bulova stock. This is the factor which raises the big doubt about the entire theory of the petitioners. To be perfectly clear about the point, it must be remembered that not only did Arde Bulova give Rose an option price but also he offered the option at exactly the same time that the employment of Joseph Kane was under consideration and before Joseph Kane entered into an employment contract with Bulova Company; and that there was a stock split in less than 1 year after the agreements were executed; and that the exercise of the option was put on a year to year basis and was made dependent upon whether Joseph Kane was employed by Bulova Company; and that the stock split occurred before the end of the first year within which the stock option could be exercised.

After careful consideration of the respective arguments of both parties, it must be concluded that the situation in this case is not essentially different from the situation in the case of *Wanda V. Van Dusen, supra.* It is concluded that there existed a vital causal connection between Joseph's employment by and his rendition of services to Bulova Company, and the purchases of the Bulova stock at a favorable option price, and the compensation to be "realized" by Joseph for his services to the company, and the granting by Arde Bulova of the highly advantageous option to Rose before or at precisely the same time that Joseph Kane agreed to become the assistant to the president of Bulova Company. We agree with the respondent that, in truth, the stock option was the "clincher" of the employment agreement. We think there is no doubt that Arde Bulova intended that his option would be the final inducement which would bring about Joseph Kane's acceptance and continuation of employment by Bulova Company, and that there was present the intention that the economic benefit to be derived from the exercises of the option would constitute additional compensation for Joseph's services to Bulova Company. The *Van Dusen* case is strong authority in support of the respondent's determination.

A taxpayer cannot avoid tax upon his "realization" of income, such as compensation for his personal services, by anticipatory arrange-

1126

ments. *Lucas* v. *Earl*, 281 U. S. 111; *Burnet* v. *Leininger*, 285 U. S. 136; and *Helvering* v. *Horst*, 311 U. S. 112. Even though Rose exercised the option and acquired the stock, the difference between market value and the option price at the time blocks of shares of Bulova stock were purchased constituted additional compensation to Joseph for services which he had rendered during the year in which each stock option was exercised, and he cannot escape the reach of section 22 (a) merely because his wife exercised the option and made the purchase of the stock. He rendered the personal services. The Commissioner's determination under section 22 (a) is fully supported by the doctrine of *Corliss* v. *Bowers*, 281 U. S. 376; *Lucas* v. *Earl*, *supra*, and many other decisions which had followed the principle of those leading authorities.

The rule established by *Commissioner* v. *Smith*, *supra*, cannot be avoided by the convenient arrangement of having the taxpayer's wife exercise a stock option which is part and parcel of an arrangement for the employment and compensation of the taxpayer. In the proceedings of Joseph Kane, the respondent's determinations are sustained.

The conclusion in the main issue requires that the respondent's determination for the year 1947 in the proceeding of Rose Kane be reversed and set aside. It is so held.

> *In Docket Nos. 50587 and 52755 decisions will be entered for the respondent.*
>
> *In Docket No. 52756 decision will be entered for the petitioner.*