*Decision will be entered under Rule 50.*

ESTATE OF JAMES S. OGSBURY, DECEASED, FLORENCE N. OGSBURY, EXECUTRIX, AND FLORENCE N. OGSBURY, SURVIVING WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52837. Filed April 22, 1957.

*Harman Hawkins, Esq.,* for the petitioner.

*Ellyne E. Strickland, Esq.,* and *A. Jesse Duke, Jr., Esq.,* for the respondent.

KERN, *Judge:* The major issue presented for decision herein is whether petitioner received compensation by means of a stock option granted to him by his employer, Fairchild, in the year in which the option was exercised (1945) or in the year in which payment and transfer of stock was made (1948). If we should determine that petitioner received compensation in 1948, when payment and transfer of the stock was accomplished, then we must determine the fair market value of the stock as of the date of the transfer, December 8, 1948.

The petitioner's position is that he received extra compensation upon the exercise of the option in 1945. He contends that the transfer of the stock and payment therefor in 1948 was merely the completion of a fixed contractual obligation entered into in 1945, and that any economic benefit resulting from this transaction·must be calculated as of the time at which the obligations and duties under the contract became definite and certain. Respondent, on the other hand, contends that the exercise of the option in 1945 did not bind the parties thereto. He argues that petitioner's notice of exercise of the option contained in his letter to Fairchild dated December 29, 1945, was not an exercise of the option but merely notice that petitioner "intended to exercise the option and would purchase the stock at some future date to be chosen by him during the course of his employment." Respondent also argues that no economic benefit and, therefore, no income was realized until the transaction was completed in 1948 and petitioner had received title to the stock and the benefits and burdens appertaining thereto. *Commissioner* v. *Smith*, 324 U. S. 177; *Lucas* v. *North Texas Lumber Co.*, 281 U. S. 11; *Commissioner* v. *Segall*, 114 F. 2d 706, certiorari denied 313 U. S. 562, reversing 38 B. T. A. 43; *Fred C. Hall*, 15 T. C. 195; *J. T. Wurtsbaugh*, 8 T. C. 183. Of these cases, only the *Smith* case involved a stock option.

We cannot agree with respondent's interpretation of the option contract. It should be noted, at the outset, that the option was to expire, on its terms, as of December 31, 1945. Nowhere in the record is there any evidence that the option could be extended by a statement of intention. Rather, from petitioner's course of action and Fairchild's statements to the Securities and Exchange Commission, it is clear that both petitioner and Fairchild intended to be and were bound by their amended contract.

The terms of the contract are clear and unambiguous. It provides that: "Upon the mailing of such notice [petitioner] *shall be obligated* to the Company for the full purchase price of the

shares * * *, but payment therefor and delivery of the stock certificates * * * *may be postponed* to such time or times as [petitioner] shall elect, but not later than the termination of his employment by the Company * * *." (Emphasis supplied.) Petitioner could delay payment while he was still employed by Fairchild, or his estate could delay payment for a maximum period of 6 months after his death if he was employed by Fairchild at the time of his death. However, the contract affords no opportunity for cancellation by or on behalf of the petitioner. The language used in the contract is subject to only one interpretation—that petitioner and Fairchild entered into a binding agreement whereby petitioner's obligation to pay for and right to receive the stock became absolute and unconditional upon the mailing to Fairchild of the notice of petitioner's election to exercise the option. Petitioner could postpone payment within the limits set forth above, but could not rescind the contract thus made, nor refuse to pay for the stock when the limits of the postponement period had been reached. See *Blau* v. *Ogsbury*, 210 F. 2d 426.

In the alternative, respondent contends that where, as in the instant case, the exercise of the option and payment for and receipt of the stock take place in different taxable years, the year of transfer and payment is the one in which there was "effectual conveyance to Ogsbury of the benefits and burden of ownership of the stock" and, consequently the one in which there was a realization of income. In support of this contention, respondent relies heavily on *Commissioner* v. *Smith, supra, Lucas* v. *North Texas Lumber Co., supra,* and *Commissioner* v. *Segall, supra.*

The last two cases cited by respondent have to do with tax liabilities resulting from the sales of property and the precise question considered was when the sales took place. The opinion of the Supreme Court in the *Smith* case indicates that it considered the problem there to be a different one. There, as in the instant case, the tax liability resulted not from a sale of property but from the receipt by the taxpayer of "economic or financial benefit," resulting from an option given to him, as compensation, to purchase the stock of the employer corporation at bargain prices. The precise question was whether income was derived in the year the option was given or the year in which it was exercised. See, also, *Commissioner* v. *LoBue*, 351 U. S. 243.

With regard to stock options, certain rules now appear to be clear from the decided cases.

An assignable option with a readily ascertainable market value may constitute extra compensation and, therefore, taxable income in the year in which the option is granted. *Commissioner* v. *LoBue, supra; Commissioner* v. *Smith, supra.* An unassignable option, however, or one which does not have a readily ascertainable value at the time when the option is granted, may constitute extra compensation and, there-

fore, taxable income in the year in which the option is exercised. *Commissioner* v. *LoBue, supra; Commissioner* v. *Smith, supra; Estate of Connolly* v. *Commissioner*, 135 F. 2d 64, affirming 45 B. T. A. 374; I. T. 3795, 1946–1 C. B. 15; Regs. 111, sec. 29.22 (a)–1.

However, the instant case involves a factual situation which presents a question not present in any of the cited cases except the *LoBue* case. Here, the option was exercised and the rights and obligations of the parties were fixed in one year, but the payment for the transfer of the stock did not take place until a later year. The question is: In what year did the taxpayer realize income stemming from the stock option?

This question was not answered in the *LoBue* case. There, as here, the taxpayer was definitely obligated to pay for the stock covered by the option (in that case the obligation was evidenced by notes), and the employer corporation was obligated to deliver the stock to the taxpayer upon payment, these reciprocal obligations being incurred in a year prior to the taxable year. In the latter year the taxpayer paid for the stock and it was delivered to him. The Supreme Court held that taxable gain to the taxpayer should be measured as of the time the options were exercised, and not the time they were granted, and then added:

It is possible that a bona fide delivery of a binding promissory note could mark the completion of the stock purchase and that gain should be measured as of that date. * * *

Since that question had not been passed on by the lower courts, the case was remanded. See, also, concurring and dissenting opinions in the *LoBue* case.

Nor was this question answered in the *Smith* case, although in that case also the Supreme Court posed the problem. On petition for rehearing in that case, 324 U. S. 695, the Court said:

We do not have before us a case where by the exercise of an option in one year the taxpayer acquires an unconditional right to receive the stock in a later year. We express no opinion upon the question whether, in such a case, compensation would be received and would be taxable in the earlier or the later year.

It is now our duty in deciding the instant case to resolve the questions left unanswered by the Supreme Court in the *Smith* and *LoBue* cases.

In our opinion, the taxable economic benefit of the unassignable option held by petitioner was realized by him upon his exercise of the option in 1945. At that time he acquired "an unconditional right to receive the stock" even though it might be, and was, received "in a later year." For all practical purposes, he was then in receipt of the value represented by the stock option. By his own act, that of payment, he could take delivery of the stock at any time and utilize the rights to receive dividends, vote the stock, or sell it at a profit. His right to the

stock was conditioned only on his personal decision as to when to make payment, not on the happening of any event beyond his control.

It is our conclusion and we so hold that petitioner received the economic benefit of the stock option granted by Fairchild when he exercised the option in 1945 and obligated himself to pay for and accept the stock unconditionally within a limited period of time. The physical acts of payment and transfer of title to the stock, occurring in a later taxable year, did not add to the economic benefit already received. Cf. *Hawke* v. *Commissioner*, 109 F. 2d 946, remanding 35 B. T. A. 784; *Omaha National Bank* v. *Commissioner*, 75 F. 2d 434, reversing 29 B. T. A. 817; *Gardner-Denver Co.* v. *Commissioner*, 75 F. 2d 38, certiorari denied 295 U. S. 763, affirming 27 B. T. A. 1171. In view of our holding on this issue and the fact that the year 1945 is not before the Court, it is unnecessary to determine the fair market value of the Fairchild stock received under the option.

Reviewed by the Court.

*Decision will be entered for the petitioners.*

BRUCE, *J.*, dissents.