ROBERT C. ENOS AND CLARA M. ENOS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65059. Filed October 21, 1958.

*Thomas J. McManus, Esq.*, for the petitioners.
*Albert J. O'Connor, Esq.*, for the respondent.

### OPINION.

WITHEY, *Judge:* Respondent determined a deficiency in the petitioners' income tax for 1952 in the amount of $60,495.57. The issue presented for our decision is the correctness of the respondent's action in determining that gain realized from the cancellation of stock options during 1952 constituted compensation for the services of petitioner Robert C. Enos and was therefore taxable to him as ordinary income.

The case was submitted upon a stipulation of facts which is hereby adopted as our findings of fact and which may be summarized as follows:

Petitioners are husband and wife and residents of Miami, Florida. During 1952 petitioners resided in Sewickley, Pennsylvania. They filed their joint income tax return for 1952 with the director of internal revenue at Pittsburgh, Pennsylvania.

Robert C. Enos, sometimes hereinafter referred to as petitioner, became a director of the E. W. Bliss Company, sometimes hereinafter referred to as Bliss, in 1945. Bliss is a corporation organized under the laws of the State of Delaware. It is engaged in the manufacture of metal-working machinery, rolling mill equipment, and can-making machinery. During 1947 Bliss had 800,000 shares of authorized common stock, of which 341,639 shares were issued and outstanding. The common stock of Bliss is listed on the New York Stock Exchange.

On December 1, 1946, petitioner became chairman of the executive committee of E. W. Bliss Company at a salary of $1,500 per month. On March 20, 1947, he was elected chairman of the board of directors of Bliss. On May 15, 1947, his salary was increased to $20,000 a year. Petitioner resigned from the board of directors of Bliss on September 4, 1952. During the years 1947 through 1952, inclusive, he was also president and a director of the Standard Steel Spring Company.

On August 8, 1947, petitioner and Bliss executed an option agreement under the terms of which Bliss granted petitioner an option to purchase 25,000 shares of unissued stock of Bliss on or before December 31, 1950, at a price of $31.25 per share, subject to the following provisions:

(1) * * * If you are employed by us during the period from the date hereof until the expiration of six (6) months from the date hereof, you shall have the right and option, while, but only while, you are employed by us, to purchase all or any part of 4,166 of said shares of our said Common Stock at said price. If you are employed by us during the period from the date hereof until the expiration of twelve (12) months from the date hereof, you shall have the right and option, while, but only while, you are employed by us, to purchase all or any part of 4,166 additional shares of our said Common Stock at said price. If you are employed by us during the period from the date hereof until the expiration of eighteen (18) months from the date hereof, you shall have the right and option, while, but only while, you are employed by us, to purchase all or any part of 4,166 additional shares of our said Common Stock at said price. If you are employed by us during the period from the date hereof until the expiration of twenty-four (24) months from the date hereof, you shall have the right and option, while, but only while, you are employed by us, to purchase all or any part of 4,166 additional shares of our said Common Stock at said price. If you are employed by us during the period from the date hereof until the expiration of thirty (30) months from the date hereof, you shall have the right and option, while, but only while, you are employed by us, to purchase all or any part of 4,166 additional shares of our said Common Stock at said price. If you are employed by us during the period from the date hereof until the expiration of thirty-six (36) months from the date hereof, you shall have the right and option, while, but only while, you are employed by us, to purchase all or any part of 4,170 additional shares of our said Common Stock at said price. If your employment by us shall be terminated prior to December 31, 1950, this option shall thereupon become void as to any shares not theretofore purchased, except that you or your legal representatives in the event of your death shall have the right to purchase any of such shares, purchasable during the period within which the date of such termination of employment shall occur and not theretofore purchased, on or before the close of business on the 30th day following such termination of employment.

(2) It is understood and agreed between us that your employment by us has been and will be subject to your commitments to Standard Steel Spring Company. It is further understood and agreed between us, however, that subject to your commitments as aforesaid, we will employ you to render and you will render during the period from the date hereof until the expiration of six (6) months from the date hereof such advisory and managerial services as we may reasonably request at the same rate of salary you now receive, and we will afford you the opportunity to be employed by us to render the same services at the same rate of compensation for such consecutive period of time thereafter until the close of business on December 31, 1950, as you may elect. Any cessation of employment by you by reason of our failure to afford you the opportunity of being so employed shall not be construed as a termination of employment for the purposes of paragraph 1 hereof.

* * * * * * *

(5) This option may be assigned by you at any time, in whole or in part, by an assignment specifying the number of shares in respect of which the right to purchase has been assigned, the period within which the right to purchase such

shares is exercisable, and the name of the assignee. Such assignment shall not be effective until a copy thereof, duly executed by you and accepted by the assignee, shall have been filed with us at our office at No. 450 Amsterdam Street, Detroit 2, Michigan or at such other of our offices as we may designate. The right of any such assignee to purchase shall be subject to your continued employment by us to the same extent as if such right had been retained by you and any such portion of this option so assigned shall expire at the close of business on the 30th day following the termination of your employment.

(6) Until the expiration of this option we agree to reserve a sufficient number of authorized but unissued shares of Common Stock as shall be required to fulfill our obligations hereunder. * * *

The price of the Bliss stock on the New York Stock Exchange on August 8, 1947, the date of the option agreement, was 29¾ High and 29 Low.

On or about August 18, 1948, E. W. Bliss Company split its stock on the basis of 2 shares for 1. Consequently, under the provisions of the foregoing option agreement, the number of shares subject to the option was increased from 25,000 to 50,000 and the price per share was correspondingly reduced from $31.25 to $15.625.

The option agreement was amended by a supplemental agreement dated January 5, 1950. The supplemental agreement, in addition to other amendments, made the following changes in the original agreement:

(1) We hereby grant to you the right and option, upon the terms and conditions herein set forth, to purchase from us at any time before the close of business on December 31, 1952 the following number of authorized but unissued shares of our Common Stock at a price of $15.625 per share:

(a) 33,328 shares; plus

(b) 8,332 shares, if you shall be employed by us from the date hereof until the close of business on February 7, 1950; plus

(c) 8,340 shares, if you shall be employed by us from the date hereof until the close of business on August 7, 1950.

If your employment by us shall be terminated prior to December 31, 1952, other than as the result of your death or incapacity by sickness or accident, this option shall terminate, in respect of any shares not theretofore purchased hereunder, at the close of business on the 30th day after such termination of employment. If your employment by us shall be terminated prior to December 31, 1952 as the result of your death or incapacity by sickness or accident, this option shall terminate, in respect of any shares not theretofore purchased hereunder, at the close of business on such date which shall be such number of days after December 31, 1950 as shall equal twice the number of days which you shall be employed by us during the calendar year 1950.

(2) Subject to your commitments to Standard Steel Spring Company, we will employ you to render and you will render during the period from the date hereof until December 31, 1950 such advisory and managerial services as we may reasonably request at the same rate of salary which you received during December 1949. We will also afford you the opportunity to be so employed by us for such consecutive period of time after December 31, 1950 and until December 31, 1952 as you may elect. Any cessation of your employment by us by reason of our failure to afford you the opportunity of being so employed shall

not be considered a termination of employment for the purposes of paragraph (1) hereof.

The price of the Bliss stock on the New York Stock Exchange on the date of execution of the supplemental option agreement was 14¾ High and 14½ Low.

Petitioner assigned his rights under the option agreements to his wife, Clara M. Enos, with respect to the number of shares indicated below:

| Date of assignment | Shares subject to option | Amount paid by assignee (total) | Price of Bliss stock on N. Y. Stock Exchange (per share) | |
|---|---|---|---|---|
| Feb. 9, 1948 | 1,766 | $25 | 26½ | High |
| | | | 26½ | Low |
| Apr. 29, 1948 | 3,532 | 25 | 31½ | High |
| | | | 31 | Low |
| Apr. 29, 1950 | 7,064 | 50 | 13⅜ | High |
| | | | 13¼ | Low |
| Increase because of 2 for 1 stock split on Aug. 18, 1948 | 5,298 | | | |
| Total | 17,660 | 100 | | |

The assignment of rights to Clara M. Enos was recorded on the books of Bliss.

Petitioner assigned his rights under the option agreements to his daughter, Betty E. Wisner, with respect to the number of shares indicated below:

| Date of assignment | Shares subject to option | Amount paid by assignee (total) | Price of Bliss stock on N. Y. Stock Exchange (per share) | |
|---|---|---|---|---|
| Feb. 9, 1948 | 1,200 | $25 | 26½ | High |
| | | | 26½ | Low |
| Apr. 29, 1948 | 2,400 | 25 | 31½ | High |
| | | | 31 | Low |
| Apr. 29, 1950 | 4,800 | 50 | 13⅜ | High |
| | | | 13¼ | Low |
| Increase because of 2 for 1 stock split on Aug. 18, 1948 | 3,600 | | | |
| Total | 12,000 | 100 | | |

The assignment of rights to Betty E. Wisner was recorded on the books of Bliss.

Petitioner assigned his rights under the option agreements to his daughter, Martha E. Miller, with respect to the number of shares indicated below:

| Date of assignment | Shares subject to option | Amount paid by assignee (total) | Price of Bliss stock on N. Y. Stock Exchange (per share) | |
|---|---|---|---|---|
| Feb. 9, 1948 | 1,200 | $25 | 26¼ | High |
| | | | 26¼ | Low |
| Apr. 29, 1948 | 2,400 | 25 | 31¼ | High |
| | | | 31 | Low |
| Apr. 29, 1950 | 4,800 | 50 | 13⅜ | High |
| | | | 13¼ | Low |
| Increase because of 2 for 1 stock split on Aug. 18, 1948 | 3,600 | | | |
| Total | 12,000 | 100 | | |

The assignment of rights to Martha E. Miller was duly recorded on the books of Bliss.

The option agreement originally executed August 8, 1947, was further amended by an agreement dated November 1, 1950, which provided that any rights which theretofore had not been assigned by petitioner were not transferable by him except by will or by virtue of the local laws of descent and distribution. Further, the stock rights which he retained were exercisable only by petitioner during his lifetime. The price of Bliss stock on the New York Stock Exchange on November 1, 1950, was 13⅜ High and 13⅛ Low.

At a meeting of the board of directors of Bliss, held April 22, 1952, the officers of the corporation were authorized to purchase from the assignees of petitioner the stock options upon the payment of $2 for each share of common stock covered by the options assigned to them. The minutes of the meeting of the board of directors of Bliss held April 22, 1952, read, in part, as follows:

> The Chairman stated that the agreement gave Mr. Enos options to purchase at any time prior to December 31, 1952, an aggregate of 50,000 shares of Common Stock of the Corporation at a price of $15.625 per share. The Chairman further stated that the options were originally assignable and that prior to November 1, 1950, Mr. Enos assigned to his wife, Clara M. Enos, and his daughters, Elizabeth Enos Wisner and Martha Enos Miller, his rights under the agreement to purchase 17,660 shares, 12,000 shares and 12,000 shares, respectively. He further stated that under the terms of the amendment dated November 1, 1950, the options relating to the remaining 8,340 shares of Common Stock were made non-assignable. The Chairman then stated that it was deemed desirable from the standpoint of the Corporation that the assigned options be acquired by the Corporation thereby preventing the dilution of the equity of the present stockholders which would result from the issuance of stock pursuant to the exercise of the options. He informed the meeting that a proposal had been made by the assignees of the options to sell the options to the Corporation upon the payment of Two [*sic*] ($2.00) for each share or Common Stock covered thereby.

The options to purchase stock which were received under the option agreement executed August 8, 1947, and amendments thereto were never exercised by petitioner or his assignees. On May 1, 1952, Clara M. Enos entered into a letter of agreement with Bliss which provided as follows:

> Reference is made to the agreement originally entered into with you by Robert C. Enos under date of August 8, 1947 (as the same was amended under dates of January 5, 1950 and November 1, 1950). This will advise you that the right granted to Mr. Enos under said agreement to purchase 50,000 shares of the Common Stock of your Corporation at a price of $15.625 per share was, to the extent of 17,660 shares, duly assigned by Mr. Enos to the undersigned.
>
> The undersigned hereby assigns to you all of her rights under the aforementioned agreement with respect to 17,660 shares of Common Stock of your Corporation. It is understood that provided you receive similar assignments from Elizabeth Enos Wisner and Martha Enos Miller covering options on an

aggregate of 24,000 additional shares, you will pay to the undersigned the sum of Two Dollars ($2.00) for each share covered by the options, or an aggregate of $35,320. If for any reason you fail to make such payment, this assignment shall be null and void.

Clara M. Enos received $35,320 from Bliss and reported a profit of $35,220 as long-term capital gain in the joint income tax return filed by her and Robert C. Enos for 1952. The price of Bliss stock on the New York Stock Exchange on May 1, 1952, was 16⅞ High and 16½ Low.

Agreements similar to that entered into by Bliss with Clara M. Enos were likewise executed with Betty E. Wisner and Martha E. Miller as a result of which each received $24,000 from Bliss for the cancellation of the stock options assigned to them and each reported $23,900 as long-term capital gain for 1952.

The petitioners did not report either the receipt of the stock options under the option agreement executed August 8, 1947, or the receipt of any rights under the amendments of January 5, 1950, and November 1, 1950, as income in their income tax returns for the years 1947 and 1950. The petitioners did not report the receipt of any income or the incurrence of any losses arising from the transfer of the option rights in 1948 and 1950 in their income tax returns for those years.

In its Federal income and excess profits tax return for 1952 Bliss reported the payments made to Clara M. Enos, Betty E. Wisner, and Martha E. Miller in the aggregate amount of $83,320 as a short-term capital loss, thereby reducing its long-term capital gain for that year. It did not deduct the foregoing payments as compensation.

The stock option acquired by petitioner on August 8, 1947, had no ascertainable market value on that date. The issuance of the foregoing option was not itself intended as compensation to petitioner. The amounts realized as a result of the assignments of the option rights to Bliss in 1952 were compensation for services rendered by petitioner.

The respondent has determined that the stock option granted the petitioner by E. W. Bliss Company on August 8, 1947, was without value on that date and that any gain realized from the surrender by the assignees on May 1, 1952, constituted compensation to petitioner for his services, the taxable character of which cannot be changed by an anticipatory assignment to his wife and daughters.

The petitioner first contends that the grant of the stock option in 1947 constituted compensation taxable to him in that year. In the alternative, petitioner contends that any additional compensation was realized upon the assignment of option rights in 1948 and 1950. In any event, petitioner maintains that he is not taxable with the proceeds received by the assignees resulting from the cancellation of the option in 1952.

Under the terms of the option agreement executed August 8, 1947, petitioner's right to exercise the option was expressly contingent upon his continued employment with Bliss. The rendition of services by the petitioner was the consideration for his right to purchase stock at the stated price. If his employment by Bliss terminated, his opportunity to exercise the option also ceased. Petitioner did not acquire the right to purchase any stock until he continued for 6 months in the employ of Bliss. Such a provision constituted an unpredictable contingency on August 8, 1947, thereby making it impossible to ascribe any value to the option at the time it was granted. *Commissioner* v. *LoBue*, 351 U. S. 243; *Van Dusen* v. *Commissioner*, 166 F. 2d 647, affirming 8 T. C. 388. There is no evidence in the record here from which a market value for the option could be determined. Since at the time the option was granted the purchase price stated in the option was higher than the market value of the stock and inasmuch as the option was granted on August 8, 1947, and consequently could not acquire value within that year, it does not appear that the issuance of the option to petitioner in 1947 was intended as compensation. The fact that petitioner did not report on his income tax return for 1947 any income arising from the receipt of the option in that year indicates that he did not regard it as compensation at that time.

It is apparent from the foregoing that the option agreement executed on August 8, 1947, did not represent compensation to petitioner in that year.

However, since the issuance of the option could not itself compensate the petitioner and since he was a salaried employee of E. W. Bliss Company at the time the option was canceled in 1952, it is clear that the gain realized from the cancellation of the option in 1952 represented the compensation contemplated by the parties for services rendered by petitioner. *Commissioner* v. *LoBue, supra.*

Petitioner contends, however, that if the grant of the option to him in 1947 did not give rise to the realization of the full compensation intended by the parties, any additional compensation would be realized in 1948 and 1950 (to the extent of $300) when, petitioner insists, he sold the option in question to his wife and daughters. Further, petitioner argues that he disposed of the option in 1948 and 1950 and, consequently, in no event is he taxable with the proceeds of the sale received by Clara M. Enos, Betty E. Wisner, and Martha E. Miller in 1952. We are not convinced, however, that the transfers of the option rights by petitioner to his wife and daughters during 1948 and 1950 were actually bona fide arm's-length transactions. The consideration received was only $300 for the option to purchase 41,660 shares of stock, or a little less than 1 cent per share, at a time when the stock of E. W. Bliss Company was selling on the New York

Stock Exchange at prices ranging from $26.50 per share to $31.50 per share (1948), and at approximately $13 per share (1950). In view of the close family relationship existing between the petitioner and the assignees and the nominal consideration received by petitioner, the transactions, in our opinion, were not at arm's length and were not bona fide sales. Since petitioner did not report on his income tax returns for either 1948 or 1950 any gain resulting from the transfers of the option rights in those years, it does not appear that he himself really regarded those transactions as sales.

The general purpose of the compensatory stock option plan here in question appears to be that the employee, petitioner, will retain the option until it increases in value and will then either exercise or dispose of it, thereby realizing additional compensation for his services. If the petitioner had either exercised the stock option in question or had surrendered or disposed of it in an arm's-length transaction, he would have been taxable on any gain resulting from the exercise, surrender, or disposition thereof as compensation. *Commissioner* v. *Smith*, 324 U. S. 177; *Commissioner* v. *LoBue, supra; Estate of James S. Ogsbury*, 28 T. C. 93, affd. 258 F. 2d 294; *Charles E. Sorensen*, 22 T. C. 321.

Since any income realized by petitioner from the exercise, surrender, or disposition of the option would have constituted compensation for his services, the proceeds received by others as the result of an ineffective disposition of the option pursuant to a transaction not at arm's length is likewise taxable as compensation to him. Compensation for services is taxable to the person rendering the services and the tax upon the realization of such income cannot be avoided by an anticipatory assignment. *Lucas* v. *Earl*, 281 U. S. 111; *Burnet* v. *Leininger*, 285 U. S. 136; *Helvering* v. *Horst*, 311 U. S. 112; *Helvering* v. *Eubank*, 311 U. S. 122.

Our decision in *Joseph Kane*, 25 T. C. 1112, affd. 238 F. 2d 624, certiorari denied 353 U. S. 931, is in point here. In that case, a stock option was granted directly to the taxpayer's wife by the chairman of the board of directors and chief stockholder of Bulova Watch Company as an inducement to the taxpayer to accept a position as assistant to the president of that company. The option agreement was contingent upon the continued employment of the taxpayer with Bulova Watch Company and was intended as additional compensation to him. At the time the option was granted to the taxpayer's wife the option price exceeded the market value of the stock. We there held that the gain subsequently realized upon the exercise of the option by the taxpayer's wife constituted compensation for his services and was therefore taxable to him under section 22 (a) of the Internal Revenue Code of 1939. In so holding, we stated, in part, as follows:

Even though Rose exercised the option and acquired the stock, the difference between market value and the option price at the time blocks of shares of Bulova stock were purchased constituted additional compensation to Joseph for services which he had rendered during the year in which each stock option was exercised, and he cannot escape the reach of section 22 (a) merely because his wife exercised the option and made the purchase of the stock. He rendered the personal services. * * *

The rule established by *Commissioner* v. *Smith, supra,* cannot be avoided by the convenient arrangement of having the taxpayer's wife exercise a stock option which is part and parcel of an arrangement for the employment and compensation of the taxpayer. * * *

In the instant case, Robert C. Enos personally received the stock option in question and subsequently assigned his rights thereunder to his wife and two daughters, whereas, in *Joseph Kane, supra,* the option was granted directly to the wife and was never in the taxpayer's name. In our opinion, our holding in *Joseph Kane, supra,* is controlling of the situation here presented. As we view the transactions here in question, no taxable event occurred until the petitioner's wife and daughters surrendered the option agreement to E. W. Bliss Company in 1952 in consideration of the payment by Bliss of $2 for each of the 41,660 shares of stock covered by the agreement. We accordingly hold that the gain realized from the cancellation of the stock option in question constituted compensation to petitioner and was taxable to him in 1952. Sec. 22 (a), I. R. C. 1939.

*Decision will be entered for the respondent.*